IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Mary Alice Walter, | : | |
| | : | Case No. 1:05cv327 |
| Plaintiff, | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER DENYING THIRD |
| The Cincinnati Zoo and Botanical | : | PARTY'S MOTION FOR |
| Garden, | : | PROTECTIVE ORDER AND |
| | : | WITNESS FEES AND |
| Defendant. | : | ORDERING THIRD PARTY TO |
| | : | PROVIDE DOCUMENT TO |
| | : | PLAINTIFF'S COUNSEL |
| | : | |

This matter comes before the Court on nonparty witness Albert T. Brown, Jr.'s Motion for Protective Order and Witness Fees (doc. #18); Supplemental Memorandum in Support of Motion for Protective Order and Witness Fees (doc. #21); and Supplemental Declaration (doc. # 31). For the reasons that follow, the Court **DENIES** Mr. Brown's Motion for Protective Order and Witness Fees (doc. #18) and **ORDERS** Mr. Brown to provide Plaintiff's counsel with a copy of the typed report in dispute within **THREE BUSINESS DAYS** of the date of this Order.

## I.    BACKGROUND

The following background information is taken from the Court's May 3, 2006 Order (doc. #26). Plaintiff in this case is Mary Alice Walter, a former employee of Defendant the Cincinnati Zoo and Botanical Garden ("Zoo"). Ms. Walter has sued the Zoo for, among other things, sexual harassment and negligent retention of her alleged harasser, Mr. Bob Coleman. During the course of discovery, Plaintiff's counsel served Mr. Brown with a subpoena for "[a]ny

and all non-privileged documents regarding [his] representation of Karen Wilson relating to her employment at the [Zoo]." (Doc. #18, ex. A.) Plaintiff believes that information regarding Mr. Brown's representation of Ms. Wilson, which also involved alleged harassment by Mr. Coleman, is relevant to Ms. Walter's negligent retention claim against the Zoo.

Mr. Brown refused to answer the subpoena because, in his words, "[i]t appeared that [he] could not respond to that subpoena without invading the attorney/client privilege" of Ms. Wilson. (Doc. #18-2 (Brown affidavit).) Mr. Brown informed Plaintiff's counsel that he had no non-privileged documents that he had not already produced, and that Ms. Wilson had instructed him that she did not authorize any waiver of privilege. Plaintiff's counsel then informed Mr. Brown via letter that he was in apparent contempt of the subpoena because he had failed to produce certain "non-privileged" notes of Ms. Wilson about which Ms. Wilson had testified at her deposition, and that she would file a motion to compel him to comply. (Doc. #18, ex. H.) Mr. Brown then filed his Motion for Protective Order and Witness Fees (doc. #21), and Plaintiff's counsel called the Court to request a discovery conference.

The Court held a discovery conference on April 6, 2006. At the conference, Plaintiff's counsel argued that Ms. Wilson's notes were not privileged because Ms. Wilson took them contemporaneously with her interactions with Mr. Coleman and did not give them to Mr. Brown until later. Mr. Brown argues that the notes fall within the attorney-client privilege because Ms. Wilson communicated them to him and has never waived her attorney-client privilege. The Court instructed Plaintiff's counsel to file the relevant deposition pages with the Court and took the matter under submission. On May 3, 2006, following review of the Ms. Wilson's relevant deposition testimony and the law, the Court ordered Mr. Brown to submit additional evidence

regarding his former client, Ms. Karen Wilson's, creation of the notes in dispute or face denial of

his Motion for a Protective Order (doc. # 26).  On May 8, 2006, Mr. Brown submitted his

Supplemental Declaration, in which he declared that, although Ms. Wilson did once give him

handwritten notes, he returned them to her on October 18, 1998 and retained no copies.  (Doc. #

31 at 1.)  He also declared that on July 10, 1998, Ms. Wilson delivered to him what he called "a

typed report of events" which he still had in his possession.  (Id.)  On May 25, 2006, the Court

ordered Mr. Brown to submit a copy of the typed report for the Court's in camera review (doc.

#38).

II.     ANALYSIS

        A.      MOTION FOR PROTECTIVE ORDER

        Under Federal Rule of Civil Procedure 45(c)(3)(A)(iii), a court shall quash or modify a

subpoena if it "requires disclosure of privileged or other protected matter and no exception or

waiver applies."  "[B]oth case law and treatises establish that the party who seeks to quash the

subpoena has the burden to establish that it is unreasonable and oppressive."  In re Goodyear

Tire & Rubber Co. Secs. Litig., No. 1:89-0894X, 1991 WL 172930, at *2 (N.D. Ohio 1991);

Pollit v. Mobay Chemical Co., 95 F.R.D. 101, 106 (S.D. Ohio 1982).  The burden to demonstrate

entitlement to a privilege is also "on the party opposing production."  Royal Surplus Lines Ins. v.

Sofamor Danek Group, 190 F.R.D. 463, 492 (W.D. Tenn. 1999).  Thus, it is clear that Mr.

Brown has the burden of demonstrating that the subpoena should be quashed.

        In a diversity case like this one, the court applies "state law to resolve attorney-client claims."

In re Powerhouse Licensing, LLC, 441 F.3d 467, 472 (6th Cir. 2006); Fed. R. Evid. 501.  Under

Ohio law, "[t]he following persons shall not testify in certain respects:  (A) An attorney,

3

concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client."  Ohio Rev. Code § 2317.02.

In her deposition, Ms. Wilson testified that she had notes regarding Mr. Coleman that she kept at her house.  (Doc. #23, Wilson dep. at 92-93.)  She also testified that:  "If something happened, [she] went home that evening or that afternoon while things were fresh, and [she] would kind of just jot down what happened."  (Id. at 94.)  When Plaintiff's counsel asked Ms. Wilson, "were these notes something that you kept for yourself, essentially?", Ms. Wilson replied "[y]es."  (Id.)  Ms Wilson also testified, however, that she gave a copy of the notes regarding Mr. Coleman to her attorney, Mr. Brown, that she never gave the notes to anyone at the Zoo or put them in any file at the Zoo, and that she would object to providing those notes to Plaintiffs' counsel.  (Id. at 149-151.)

Mr. Brown has since declared that, although Ms. Wilson did once give him handwritten notes, he returned them to her on October 18, 1998 and retained no copies.  (Doc. # 31 at 1.)  He has also declared that on July 10, 1998, Ms. Wilson delivered to him what he called "a typed report of events occurring in June of 1998 involving herself and Mr. Coleman."  (Id.)  Finally, Mr. Brown declared that Ms. Wilson "confirmed his understanding that the memorandum was delivered to [him] for the purpose of securing her legal position with respect to the incidents and protecting her interests."  (Id.)

Before Mr. Brown submitted his declaration, Plaintiff had directed this Court to two cases which she believed supported her argument that the notes are not privileged because Ms. Wilson created them before she gave them to her attorney.  See In re Ruppert v. Repper, 309

4

F.2d 97 (6th Cir. 1962); In re Keough, 151 Ohio St. 307, 314, 85 N.E.2d 550 (Ohio 1949).  As the

Court noted in its May 3, 2006 Order, these cases in fact stand for the narrower proposition that

"certain records prepared in the normal course of [a corporate client's] business without regard

to prospective litigation may be subpoenaed even when in the hands of the [corporate client's]

attorney."  See Ruppert, 309 F.2d at 98; see also Keough, 151 Ohio St. at 314, 85 N.E.2d at 554

("mere fact" that records created in ordinary course of business were turned over to corporate

counsel does not render them privileged).  Neither case addresses the question of whether an

*individual* client's notes, taken contemporaneously with the events recorded therein, are

privileged if she later communicates them to her attorney for the purpose of obtaining legal

advice. (See doc. # 31 at 1.)

As the Court established in the analysis in its May 26, 2006 Order, see doc. #26, the mere

fact that a person created notes before she retained an attorney is not determinative of whether

the notes are privileged.  See e.g., United States v. Defonte, No. 06-1046-CR, 2006 WL 623603

(2d. Cir. Mar. 14, 2006) (notes taken by individual with an eye toward legal representation

privileged if later communicated to attorney); Clark v. Buffalo Wire Works Co., Inc., 190 F.R.D.

93 (W.D.N.Y. 1999) (same); Bernbach v. Timex Corp., 174 F.R.D. 9, 10 (D. Conn. 1997)

(same). The determinative factor is instead whether the person took the notes with the intention

of later giving them to an attorney – even an as-yet-unretained attorney – for legal advice.  See

id., see also, e.g., Angst v. Mack Trucks, Inc., Civ. A. Nos. 90-3274, 90-4329, 1991 WL 86931,

at *2 (E.D. Pa. May 14, 1991) (distinguishing between unprivileged notes taken for personal use

and privileged notes created to secure an attorney, both created before attorney retained).

Here, Mr. Brown has indicated his understanding that Ms. Wilson prepared the typed summary "for the purpose of informing [him] of the facts . . . for the purpose of providing further advice." (See doc. # 31 at 1.) Also, the typed summary itself is written in past tense, which suggests that it was written some time after the events described took place. Given these two facts, the Court could reasonably presume that Ms. Wilson prepared the notes for the purpose of seeking legal advice. However, here, unlike in Clark, the Court does not have an affidavit from the nonparty witness, Ms. Wilson, attesting to her intention when she created the typed summary. Since the question of whether the typed summary is privileged turns on Ms. Wilson's intention, the Court is unwilling to draw such an inference. The Court therefore finds that Mr. Brown has not met his burden of demonstrating that the subpoena should be quashed.[1]

The Court therefore **DENIES** Mr. Brown's Motion for Protective Order and Attorney Fees (doc. #18) to the extent it requests that this Court quash the Plaintiff's subpoena. The Court **ORDERS** Mr. Brown to provide a copy of the typed summary to Plaintiff's counsel within **THREE BUSINESS DAYS** of the date of this order.

### B.    REQUEST FOR WITNESS FEES

Mr. Brown has also moved this Court to order Plaintiff to pay him "reasonable attorney fees and costs associated with retrieval of documents and response to the subpoena." (See doc. #18.) Mr. Brown submits that, as of the time of his Supplemental Declaration, he had spent 6.2 hours responding to the subpoena. He requests that he be reimbursed for this time at his usual billing rate of $315.00 an hour, for a total of $1,085.00. (See doc. # 18, ex. I; doc. # 21 at 2.)

---

[1] The Court notes that, although the typed report must be produced to Plaintiff's counsel, the questions of whether the typed report is either relevant or admissible remain undecided, as they were not before the Court.

6

Mr. Brown argues that under Rule 45, a third party witness can receive reasonable compensation for time spent responding to a party's subpoena of him.

Under Rule 45(c)(1):

> A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

Fed. R. Civ. P. 45(c)(1). Mr. Brown has not shown that Plaintiff's subpoena imposed any undue burden or expense upon him. Nor has he provided any specific authority for the proposition that under Rule 45(c)(1), or under any other rule or case law, he is entitled to be paid at his usual hourly rate for the time it took him to respond to the subpoena.

Although the Court has found no cases directly on point, the Court has found several closely analogous cases. Several courts have considered whether nonparty witnesses – who also happened to be attorneys or doctors, and who were served with subpoenas to appear for depositions – either could be compelled to comply, or could succeed on motions to quash the subpoenas, if they were to be compensated at the statutory rate for witnesses compelled to attend a deposition rather than at their professional rates. See, e.g., Fisher v. Ford Motor Co., 178 F.R.D. 195 (N.D. Ohio 1998); Mangla v. University of Rochester, 168 F.R.D. 137 (W.D.N.Y. 1996); Irons v. Karceski, 74 F.3d 1262 (D.C. Cir. 1995), cert. denied, 517 U.S. 1189 (1996). Each of these courts held that such professionals were, in their capacity as nonparty witnesses, merely ordinary witnesses, and were therefore 1) required to comply with the subpoenas; and 2) not entitled to be compensated for their time at their professional rates. Fisher, 178 F.R.D. at

7

198-99; <u>Mangla</u>, 168 F.R.D. at 140; <u>Irons</u>, 74 F.3d at 1264.  The Court finds the reasoning of these cases persuasive and sees no reason that Mr. Brown should be entitled to his billing rate when he was subpoenaed not as an expert, but as an ordinary witness.  The Court therefore **DENIES** Mr. Brown's Motion for Witness Fees.

## III.   CONCLUSION

For the reasons above, the Court **DENIES** Mr. Brown's Motion for Protective Order and Witness Fees (doc. #18) and **ORDERS** Mr. Brown to provide Plaintiff's counsel with a copy of the typed report within **THREE BUSINESS DAYS** of the date of this Order.

IT IS SO ORDERED.


    s/Susan J. Dlott
Susan J. Dlott
United States District Judge